**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. CR 09-1033 JB

JASON PRICE,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Sentencing Memorandum and Request for Downward Departure and Variance, filed March 31, 2010 (Doc. 31)("Sentencing Memo."). The Court held a hearing on April 14, 2010. The primary issues are: (i) whether Plaintiff United States of America breached its plea agreement with Defendant Jason Price; (ii) whether Price's criminal history category of VI substantially overrepresents Price's criminal history, entitling him to a downward departure under the United States Sentencing Guidelines ("U.S.S.G.") § 4A1.3(b); and (iii) whether the Court should grant Price a variance to a sentence below the applicable guideline range. The Court first concludes that the United States has not breached the plea agreement in the manner Price suggests. The Court then grants in part and denies in part Price's request for a downward departure in criminal history category, and further grants his request for a variance.

**FACTUAL BACKGROUND**

Price's criminal history began when he was seventeen-years old. He has been convicted eight times, and four of those convictions are for one or more felony offenses. The first and last of those convictions warrant some discussion.

**1. Price's Oklahoma Drug-Trafficking Conviction.**

On August 22, 1995 -- when Price was seventeen-years old -- he was confronted by a police officer in Mannford, Oklahoma. At that time, he was cited for a curfew violation, taken to the police station, and eventually taken home. See Presentence Investigation Report ¶ 25, at 8 (disclosed February 8, 2010)("PSR"). Later that evening, Price was identified as a passenger in a vehicle that was attempting to elude police. See id.[1] When the officers finally pulled the vehicle over, they found drug paraphernalia and a small amount of marijuana inside. See id. On November 28, 1995, Price was arrested and charged with possession with intent to distribute marijuana based on the events of August 22. See id. On January 30, 1996, Price, with the assistance of counsel, pled guilty to the possession-with-intent-to-distribute charge. See id.

**2. Price Sells a Firearm to an Undercover Police Officer.**

On July 15, 2009 -- fourteen years and six convictions later -- Price was arrested and charged for being a felon in possession of a firearm. See PSR at 1. The investigation, however, began on September 10, 2008, when a confidential informant ("CI") told an Albuquerque Police Department detective that Price had a gun which he wanted to sell. See PSR ¶ 7, at 4. The detective had the CI contact Price and arrange for the purchase of the gun. See id. The detective and the CI arrived at the designated location and waited for Price, who arrived moments later. See id. Price then walked to the detective's vehicle and sat in the front passenger seat; the CI was in the back seat. See id. Price reached into his waistband and pulled out a gun -- a Colt Police Positive .38 caliber revolver. See id. Price's asking price for the gun was $200.00, but he accepted the detective's counter-offer

[1] The PSR does not specify why the police were attempting to pull the vehicle over, but one might surmise that it was for a curfew violation, given that it occurred later in the evening on a night on which Price had already been cited for violating curfew.

of $175.00. See id.

On October 21, 2008, an agent from the Bureau of Alcohol, Tobacco, and Firearms tested the gun and found that it was functional. See PSR ¶ 10, at 5. On October 30, 2008, the agent determined that the gun had been transported in interstate commerce. See id. On April 22, 2009, a Grant Jury returned an Indictment which charged Price with being a felon in possession of a firearm based on the events of September 10, 2008. See PSR ¶ 1, at 3. Price was subsequently arrested on July 15, 2009. See PSR at 1.

**PROCEDURAL BACKGROUND**

On November 24, 2009, Price pled guilty to one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). See Plea Agreement ¶ 3, at 2, filed November 24, 2009 (Doc. 23). The United States Probation Office ("USPO") prepared a PSR, which calculated Price's total offense level at 17, and his criminal history category at VI. See PSR ¶ 23, at 7; id. ¶ 33, at 12. A criminal history category of VI and an offense level of 17 yield a guideline imprisonment range of 51 to 63 months. See PSR ¶ 54, at 16.

Price has numerous prior convictions for misdemeanor and felony offenses. The first conviction, which occurred in November of 1995, when Price was seventeen years old, involved police finding Price in a vehicle with "[d]rug paraphernalia and a small amount of marijuana." PSR ¶ 25, at 8. Price was charged as an adult and pled guilty to possession with intent to distribute -- a drug-trafficking felony -- in January of 1996. See id. In January of 2000, Price pled guilty to a felony count of unlawful possession of a controlled drug. See PSR ¶ 26, at 8-9. At that same time, he pled guilty to a misdemeanor count of unlawful possession of marijuana. See PSR ¶ 27, at 9. On April 15, 2004, Price pled guilty to one count of misdemeanor shoplifting. See PSR ¶ 28, at 9. On August 24, 2005, Price pled guilty to two felony counts of possession with intent to distribute

methamphetamine. See PSR ¶ 29, at 10-11. On July 25, 2005, Price pled guilty to another count of misdemeanor shoplifting. See PSR ¶ 30, at 11. On February 20, 2006, Price pled guilty to one count of concealing identity -- a misdemeanor. See PSR ¶ 31, at 11. Price's criminal history also includes several arrests -- one for shoplifting in 1992, one for rape in 1995, one for possession of danger drugs in 1996 -- none of which resulted in convictions. See PSR ¶¶ 34-36, at 12. Finally, Price has pending against him drug-trafficking charges in state court related to the conduct underlying this current case. See id. ¶ 37, at 13.

In his Sentencing Memorandum, Price asks the Court to grant him a downward departure to his criminal history category and/or a variance to a sentence below the advisory guideline range. Both requests are based on the argument that the criminal history category, as it is calculated in the PSR, substantially overrepresents Price's criminal history and the likelihood that he will commit other crimes in the future. The United States opposes both the downward departure and the variance. See United States' Response to Defendant's Sentencing Memorandum and Request for Downward Departure and Variance [Doc. 31], filed April 12, 2010 (Doc. 36)("Response").

At one point in their response, the United States characterizes the actions underlying the offense for which Price is being sentenced as "illegally arming himself with a .38 caliber pistol." Response at 3. In his reply brief, Price takes issue with the United States characterizing his conduct as "arming himself," and asserts that the gun was not used in connection with any drug offense or other felony. See Mr. Price's Reply to the Government's Response to His Request for Downward Departure and Variance ¶¶ 5-8, at 3-4, filed April 13, 2010 (Doc. 38) ("Reply"). Price argues that the United States' characterization is inconsistent with the stipulation in paragraph 10(c) of the plea agreement, which states that the pistol "was not used in connection with a drug offense or any other felony on September 10, 2008." Response ¶ 6, at 3 (quoting Plea Agreement ¶ 10(c), at 5).

At the hearing, Assistant United States Attorney Jack Burkhead asserted that the United States was not intending to imply in its brief that the gun had been used in the commission of any crime, but only that Price had put the loaded gun in the waistband of his pants and removed it once in the vehicle with the undercover officer. See Transcript of Hearing at 3:14-4:11 (taken April 14, 2010)("Tr.")(Burkhead).[2] Mr. Burkhead further represented that he did not believe the United States had breached any part of the plea agreement by referring to Price's possession of the gun as "arming himself." Tr. at 3:14-4:11 (Burkhead). John Butcher, Price's attorney, argued that the sentence in the response brief took the United States' rhetoric too far and implied that Price had committed a crime other than the one to which he pled guilty, which, Mr. Butcher argued, breached the plea agreement. See Tr. at 4:24-6:15 (Butcher).

## ANALYSIS

The statements that the United States made in response to Price's sentencing memorandum did not violate the plea agreement, and so the Court will continue to sit on the case. On the merits, the Court grants the motion for a downward departure in criminal history category in part, but does not depart as much as Price requests. The Court will, however, grant his request for a variance.

## I. STATEMENTS THE UNITED STATES MADE IN THE RESPONSE TO PRICE'S SENTENCING MEMORANDUM DID NOT VIOLATE THE PLEA AGREEMENT.

The first issue that the Court must resolve is whether the United States breached the plea agreement by characterizing Price's possession of the gun in this case as "arming himself." If the United States breached the plea agreement, the Court should remedy the breach by ordering the United States to amend its response and delete the alleged breaching language. The Court would

[2] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

then recuse itself from the case, allowing a new judge, who is not tainted by the alleged breach, to sentence Price. See United States v. VanDam, 493 F.3d 1194, 1206 (10th Cir. 2007)(stating that resentencing is the usual remedy for a breach of plea agreement, and that "the general rule [is] that resentencing should take place in front of a different judge."); United States v. Rogers, No. CR 07-0616 JB, 2008 WL 2397669, at *5 (D.N.M. Jan. 15, 2008)(Browning, J.)("Resentencing before a different judge is the 'pro forma' remedy for breach of a plea agreement and is usually afforded.")(citing United States v. Mata-Vasquez, 111 Fed. Appx. 986, 991 (10th Cir. 2004); United States v. Cachucha, 484 F.3d 1266, 1271 (10th Cir. 2007); United States v. Brye, 146 F.3d 1207, 1213 (10th Cir. 1998)).

Mr. Burkhead argued that referring to the possession of a loaded gun as "arming" oneself is not incorrect and does not violate the plea agreement. Tr. at 3:14-4:11 (Burkhead). Mr. Butcher responded that the statement in the United States' response brief implies that Price is guilty of crimes other than that for which he pled guilty, is concerned that the Court might construe it as such, and thus asserted that its inclusion in the brief is a breach of paragraph 10(c) of the plea agreement.[3] See Tr. at 4:24-6:15 (Butcher). Mr. Butcher stated that he would be satisfied that the United States did not breach the plea agreement if the Court would strike the sentence from the response brief.

The Court will not strike the sentence from the response brief, nor will it find that the United States breached the plea agreement. That Price "armed himself" appears to be a correct statement of the facts. Although he may not have intended to use the gun as a weapon, he concealed a loaded firearm on his person and thereby armed himself. The Court thus does not find the inclusion of that

---

[3] Paragraph 10(c) of the plea agreement stipulates that the pistol which Price tried to sell to the police officer "was not used in connection with a drug offense or any other felony on September 10, 2008; thus [U.S.S.G.] § 2K2.1(b)(6) does not apply." Plea Agreement ¶ 10(c), at 5.

statement to be inconsistent with the United States' stipulation that the gun "was not used in connection with a drug offense or any other felony." The offense conduct is that Price, a felon, possessed the gun. Characterizing possession as "arming," without more, does not imply that Price committed any additional crime. The United States is allowed to argue, in a factual way, for a higher sentence; it is not allowed to breach the plea agreement. The statement adds nothing about other crimes that cannot readily be inferred from the conduct in which Price engaged. The characterization here falls on the side of allowable argument; the statement thus does not breach any statement, stipulation, or provision in the plea agreement. The Court also reassures Price that it does not construe the sentence as implying that he might be guilty of crimes other than the one to which he pled. Because the United States has not breached the plea agreement, the Court will not strike any portion of the response, will not recuse itself, and will not reassign the case to another judge.

## II. THE COURT GRANTS IN PART AND DENIES IN PART THE REQUEST FOR A DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. § 4A1.3.

Price asks the Court to grant him a two-category downward departure in his criminal history category -- from category VI to category IV -- because, he argues, category VI substantially overrepresents his criminal history and the likelihood that he will commit another crime in the future. The United States disagrees, asserting that Price has a consistent criminal history, with repeated misdemeanor and felony convictions over a period of fourteen years. The Court concludes, based on the information before it, that a downward departure is warranted, but the two-category departure that Price seeks is too great under the facts of this case.

U.S.S.G. § 4A1.3 states: "Standard for Downward Departure. -- If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes,

a downward departure may be warranted." U.S.S.G. § 4A1.3. The Court has carefully considered Price's request for a downward departure. The Court will grant the request in part and deny it in part. Rather than departing two categories, as Price requests, the Court will grant a one-category downward departure.

The Court believes that this one-category departure will have the effect of ignoring the questionable conviction for possession with intent to distribute that Price incurred when he was seventeen-years old, but not ignore Price's consistent accumulation of criminal history. The possession-with-intent-to-distribute conviction is dubious on several levels. Price, at age seventeen and with no prior criminal history, was, for some reason, charged as an adult for a crime that, based on the facts in the PSR, appeared to be fairly minor. The facts in the PSR make the crime appear more like simple possession, and yet he was convicted of possession with intent to distribute. Price pled guilty to the crime, but he was young, apparently without parental support, and probably not fully aware of the ramifications of pleading guilty to possession with intent to distribute. Finally, Price was arrested in Mannford, Oklahoma and convicted in Drumright, Oklahoma, both of which are small, rural towns with populations under 3,000.[4] While these jurisdictions are, of course, free to treat drug possessions in their counties as serious crimes, the Court believes that, if charged and convicted in a larger, urban area, Price likely would not have ended up with such a severe, adult conviction. The Court believes that Price's criminal history does not fall within the heartland of cases that warrant a category VI.

When the Court compares Price's criminal history with others who are in categories V and

[4] According to the 2000 census, in the year 2000, Drumright had a population of 2,905 people and Mannford had a population of 2,095 people. See United States Census 2000, Census 2000 Data for the State of Oklahoma, http://www.census.gov/census2000/states/ok.html (last visited July 13, 2010)(select the "State by Place" link).

VI, and considers the reliable information the Court has at its disposal, even though he pled guilty to a drug-trafficking offense, given his age, and given the amount of marijuana that was involved, the Court believes it is on a firm foundation in finding that a criminal history category of VI substantially overrepresents the seriousness of Price's criminal history. The Court cannot, however, say that a criminal history category of VI overrepresents the likelihood that Price will commit future crimes.[5] A criminal history category of V, however, does not substantially overrepresent Price's criminal history or his likelihood of committing future crimes. The Court thus finds that Price fits within the heartland of cases in which the defendant is found to have a criminal history category of V and denies his request for a downward departure to category IV.[6] With a total offense level of 17 and the downward departure to criminal history category V, Price faces a guideline imprisonment range of 46 to 57 months.

## III. THE COURT GRANTS PRICE'S REQUEST FOR A VARIANCE.

In addition to, or as an alternative to, Price's request for a downward departure, Price seeks a variance to a sentence below the guideline range. Price's primary argument is that one of the largest factors in his sentence is his conviction for possession with intent to distribute when he was

---

[5] Because U.S.S.G. § 4A1.3 is in the disjunctive rather than the conjunctive, the Court does not have to find both prongs in order to depart. See U.S.S.G. § 4A1.3(b)(1) ("If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.")(emphasis added).

[6] There is some dispute whether Price told the undercover officer who arrested him in this federal case that he was still in the drug-selling business. It appears to the Court that Price is in the drug business, if at all, to feed his own drug addition. Nevertheless, because the parties disagree on this point -- the United States asserts that he made that representation to the arresting officer, and Price contends that he did not -- the Court will consider that statement to be a disputed fact, and not weigh it against Price's request for a downward departure because the United States did not introduce any evidence that Price made the statement.

a seventeen-year-old juvenile, and which involved only "a small amount of marijuana" and "drug paraphernalia." Sentencing Memo. ¶¶ 3-8, at 2-3; id. ¶ 15, at 5-6. He argues that his convictions, although numerous, do not warrant a criminal history category of VI -- a criminal history category "greater . . . than someone who is a repeat and dangerous sex offender against minors." Sentencing Memorandum ¶ 11, at 4. He points out that he has no violent crimes in his criminal history, and that he was only selling his firearm to raise money and provide for his family. See id. ¶ 12, at 4. He argues that the Court should reduce his sentence to one of 37 months, which he believes would proper balance the factors of 18 U.S.C. § 3553(a). See Sentencing Memo. ¶¶ 15-16, at 5-6. The United States opposes the request for a variance. See Response at 4.

Again, the Court has granted in part Price's request for a downward departure of his criminal history category, lowering it from VI to V. A criminal history category of V, when combined with Price's offense level of 17, results in a guideline imprisonment range of 46 to 57 months. Price is a convicted felon who was in possession of a Colt Police Positive .38 caliber pistol, serial number 20106, and four rounds of .38 caliber ammunition. The Court has considered the guidelines but, in arriving at its sentence, has taken account not only the guidelines, but of other sentencing goals. Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant. After careful consideration of counsels' arguments, both in their briefs and at the hearing, the Court concludes that the punishment set forth in the advisory guidelines is not appropriate for this sort of offense.

The Court then considered the kinds of sentences and ranges established by the guidelines, and the Court believes that the most salient factor for the Court to consider is Price's drug-trafficking conviction when he was seventeen years old. The Court is troubled that the conviction increased Price's guideline sentence so much in this case. The Court believes some variance is

appropriate to account for that substantial increase. Again, the Court has the impression, from a detailed examination of the convictions in Price's criminal history, that it is not dealing so much with a drug trafficker as with a person who is picking up convictions for drug use. On the other hand, the Court does not want to discount the fact that Price pled guilty and had counsel for the drug-trafficking conviction in Oklahoma, and knew that he was pleading to a trafficking offense. He most likely did not have a full appreciation for how important the conviction for that crime was going to be in his life if he continued to commit crimes.

The Court thus faces the question how much it should vary to bring some fairness to this situation. The Court does not believe it should totally discount the conviction in the offense level, and thus does not think that a range of 27 to 33 months is appropriate. Price does not request so low a sentence. The Court believes that it can properly treat the case as one in which Price has an offense level reduced by 2 levels, resulting in a sentencing range of 37 to 46 months. The Court had considered a variance level of one offense level, which would result in a sentence of 41 to 51 months, but decided that a sentence of 37 months would satisfy the factors outlined in 18 U.S.C. § 3553(a) just as well as a 41-month sentence, and thus the 41-month sentence was sufficient, but greater than necessary to embody the factors set forth in § 3553(a).

The Court concludes that Price has proposed a sentence that reflects the seriousness of this offense. The 37-month sentence also promotes respect for the law. The Court is concerned about the fact that Price has spent so much of his life in jails and prisons, and an appreciation that there are consequences for his criminal conduct does not appear to have fully taken hold. It thus may be that no sentence the Court could impose consistent with the guidelines would do enough to promote respect for the law, so this factor may be one that must be weighed more lightly in the balancing of factors in this case. The Court thus emphasizes the other factors: providing a just punishment in this

case, reflecting the seriousness of the offense, and affording adequate deterrence.

The Court also has concerns whether any sentence will adequately deter Price, given his consistent and extensive criminal history. The Court recommends, however, that Price participate in the Bureau of Prisons' 500-hour drug and alcohol treatment program. The Court will also require, as part of his three-year term of supervised release, that Price: (i) not possess any firearms, ammunition, or other dangerous weapons; (ii) not use or possess alcohol or any other form of intoxicant; (iii) not frequent places where alcohol is the primary item for sale; (iv) submit to periodic searches of his person, property, or automobile under his control, to be conducted in a reasonable manner and at a reasonable time for the purpose of detecting controlled substances in his possession; (v) successfully complete a substance-abuse treatment program; and (vi) successfully complete a mental-health treatment program. The state systems sometimes lacks resources to help inmates make the transition from prison to being productive members of society, but the Court has high regard for the Bureau of Prisons and the United States Probation Office, with which this imprisonment and supervised release will be Price's first encounters. The Court is confident that these organizations, in implementing and/or enforcing the conditions that the Court has set, can help reform Price and deter him from committing future crimes. Moreover, the Court believes that this 37-month sentence is sufficiently long to provide general deterrence and perhaps deter other felons from possessing firearms. In any case, because of the criteria that the Court makes part of Price's term in prison and supervised release, the Court believes that the sentence of 37 months fully reflects each of the factors embodied in section 3553(a).

The Tenth Circuit has made it clear that the Court's task, as a district court, is not to come up with a reasonable sentence, but rather to come up with one that appropriately and fairly balances the factors in § 3553(a). See United States v. Martinez-Barragan, 545 F.3d 894, 904-05 (10th Cir.

2008)(addressing the argument that "the district court erred in seeking to impose a sentence that was merely reasonable, instead of" one that complied with 28 U.S.C. § 3553(a), but finding that "[t]he record clearly reflects that the district court was aware of its responsibilities under § 3553(a)"). Nevertheless, the Court thinks a 37-month sentence is more reasonable sentence than a guideline sentence. More importantly, the Court finds that a 37-month sentence is sufficient without being greater than is necessary to comply with the purposes of punishment set for in the Sentencing Reform Act. Price is thus committed to the custody of the Bureau of Prisons for a term of 37 months.

**IT IS ORDERED** that the requests in Defendant Jason Price's Sentencing Memorandum and Request for Downward Departure and Variance are granted in part and denied in part. Price's request for a downward departure in criminal history category is granted in part and denied in part, and his request for a variance is granted. Price is sentenced to a term of 37 months in the custody of the Bureau of Prisons.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
United States Attorney
Jack E. Burkhead
Assistant United States Attorney
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

John Van Butcher
Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

*Attorney for the Defendant*